**UNITED STATES**

v.

**Marshall T. ALLRED, 529 96 6164, Private (E–1), U.S. Marine Corps.**

**NMCM 97 02077.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 26 March 1997.

Decided 29 June 1999.

Steven W. Allred, Civilian Defense Counsel.

LT Lisa C. Guffey, JAGC, USN, Appellate Defense Counsel.

Capt Michael Carsten, USMC, Appellate Government Counsel.

LT Timothy E. Curley, JAGC, USNR, Appellate Government Counsel.

Before LEO and TROIDL, Senior Judges, and ANDERSON, Appellate Military Judge.

LEO, Senior Judge:

Contrary to his pleas, the appellant was convicted at a general court-martial before officer and enlisted members of willful disobedience of a superior commissioned officer, willful disobedience of a superior noncommissioned officer, disrespect to a superior noncommissioned officer, violation of a lawful general order, two specifications of larceny, five specifications of wrongful solicitation, and four specifications of obstruction of justice, in violation of Articles 90, 91, 92, 121, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 890, 891, 892, 921, and 934, (1994). The appellant was sentenced to a dishonorable discharge, confinement for three years, and forfeiture of all pay and allowances. The convening authority disapproved the finding of guilty as to one specification of wrongful solicitation, but approved the adjudged sentence.

We find merit in the appellant's first two assignments of error.[1] The appellant con-

---

1. I. PRIVATE ALLRED WAS DEPRIVED OF HIS RIGHT TO MILITARY DUE PROCESS WHEN HIS ATTORNEY-CLIENT RELATIONSHIP WITH HIS ORIGINAL DETAILED DEFENSE COUNSEL WAS TERMINATED WITHOUT GOOD CAUSE, OVER HIS OBJECTION, AND AFTER MORE THAN FOUR MONTHS OF PRETRIAL PREPARATION.

II. THE DENIAL OF PRIVATE ALLRED'S REQUEST FOR INDIVIDUAL MILITARY COUNSEL VIOLATED HIS RIGHT TO MILITARY

tends (1) that the Government's severance of his attorney-client relationship with his defense counsel, Captain [A], was without good cause, and (2) that the subsequent denial of his request for Captain [A] as individual military counsel [IMC] violated his statutory right to counsel of his own selection. Art. 38, UCMJ. We agree and shall set aside the findings and the sentence in this case. Arts. 59(a) and 66(c), UCMJ.

## I. FACTUAL BACKGROUND

On 25 September 1996, court-martial charges against the appellant were preferred. The following day, Captain [A] was assigned as the appellant's defense counsel. Record at 17. Captain [A] had previously established an attorney-client relationship with the appellant in June 1996, as a result of his assignment to represent the appellant at a pending administrative separation proceeding. This proceeding was based, in part, on misconduct relating to some of the charges before this court-martial. When the appellant was placed in pretrial confinement in August for additional misconduct that also resulted in charges before this court-martial, Captain [A] successfully argued for the appellant's release from confinement.

In October, the appellant was evacuated to Tripler Army Hospital, Hawaii to receive medical treatment for a heart condition. Due to uncertainty at the time as to when the appellant would return, his commanding officer withdrew and dismissed the preferred charges on 22 October 1996, because of "the indefinite absence of the accused for medical treatment." Appellate Exhibit IV. Due to the pending transfer of Captain [A] in January, his senior defense counsel decided to relieve him of any future responsibilities as the appellant's defense counsel. Record at 18. After approximately two weeks in Hawaii, the appellant was released from the hospital and returned to Okinawa. Appellate Exhibit VI.

The Government re-preferred the old charges on 19 December 1996. *See* Charge Sheet; Appellate Exhibit III. Lieutenant [B] was detailed as the appellant's new defense counsel on 4 January 1997, although he had picked up the appellant's file on 16 November 1996. Record at 3; Appellate Exhibit I at 2. The Article 32 investigation was held on 17 January, and Captain [A] departed Okinawa on 25 January. Appellate Exhibit I at 5. During the first session of court on 4 March 1997, Lieutenant [B] informed the military judge that Captain [A] had previously been detailed to represent the appellant and had formed an attorney-client relationship with him. However, due to his rotation date, Captain [A] had been excused from representing the appellant by his senior defense counsel. When asked by the military judge, the appellant stated that he did not give Captain [A] permission to withdraw from the case and added that he wanted to be represented by Captain [A], with Lieutenant [B] as co-counsel. The appellant informed the military judge that he had seen Captain [A] about a dozen times and had spent several hours with his counsel on numerous occasions discussing his case.

The military judge set a preliminary session for the following day to address the issue regarding the attorney-client relationship between the appellant and Captain [A]. At that time, he received evidence to assist him in determining whether the accused had, in fact, established such a relationship with Captain [A] and, if so, whether it had been properly terminated.

Major [D], the senior defense counsel for Camp Foster at that time, appeared in court and testified that he detailed Captain [A] on 14 June 1996 to handle the appellant's administrative separation case and later the court-martial charges that were preferred in September. In November, however, Major [D] anticipated that an issue would arise from Captain [A]'s continued representation of the appellant; he knew that Captain [A] was scheduled to rotate at the end of January to Hawaii and that the appellant's medical condition had placed the case on an indefinite hold. So Captain [A] was told by Major [D] that he would not be detailed again to the appellant's case if the original court-martial charges were re-preferred. Major [D] admitted that the sole reason for his decision

was Captain [A]'s pending transfer, adding that he did not feel that Captain [A] had any unique qualifications requiring him to remain on the case. Since there were no pending charges at the time, Major [D] testified that he did not think he was severing the attorney-client relationship.

The appellant testified that he met with Captain [A] about ten times before the original charges were withdrawn. The meetings were fairly long, lasting at least an hour or more. They discussed the charges in depth and the appellant received legal advice from Captain [A] as to what they would do. When he was sent to Tripler Hospital for his heart condition, the appellant said his understanding was that he would return to Okinawa when the condition was resolved. Captain [A] later told the appellant that he had to withdraw from the case. The appellant said that he did not consent or give permission for the withdrawal. He expressly added that he desired to have Captain [A] continue to represent him at this trial. He cited, as his main reason, the "exhaustive relationship" they had developed, extending from the administrative separation proceedings to the charges before the court. Record at 34. He felt that Captain [A] had a better grasp of his situation and more experience with this type of case. Although the appellant had spoken to Captain [A] several times since the first of January and was aware that his former counsel was in the area during the Article 32 hearing, the appellant said that he believed Captain [A] would not be made available to represent him at that hearing.

The military judge directed that counsel contact Captain [A] and prepare a stipulation of his responses to specific questions from the military judge concerning the attorney-client relationship. The questions and answers are summarized below:

Q. Did Captain [A] ever obtain a release from the accused, either written or oral?

A. To the best of my recollection, I did not obtain a written release. I may have obtained an oral release, based on my conversations with the accused after the charges were first withdrawn and dismissed. Major [D] informed me that I would not be detailed as defense counsel if the charges were ever re-preferred. Although I was originally scheduled to transfer around 8 January 1997, I actually left on 28 January 1997. I also took annual leave from 8–28 December 1996. Major [D] told me that, after the charges were withdrawn and dismissed, there was no longer any case and no longer an attorney-client relationship between the accused and me. Once I knew that I wasn't going to get the case, I stopped working on it.

I spoke to the accused a couple of times while he was in Hawaii in my capacity as a counselor, rather than his attorney, to apprise him of the status of the withdrawn charges. When he returned sometime in November, I told him that I was off the case and would not be his detailed counsel if the charges were re-preferred. If he wanted me, he would have to request me as an IMC. He acknowledged that he understood. I told him that, if he did, I would probably not be made available. However, if he still wanted to submit the request, he would have to do it quickly. He never indicated that he intended to submit an IMC request for me, and he never told me that he wanted me to stay. This was the last conversation that I had with him prior to taking leave in December.

I had about three conversations with the accused after I returned from leave. They were mostly about his health status. He said that he was happy with Lieutenant [B]. The only case-related matter that we discussed was a release that I had him sign on 16 January 1997, authorizing me to release documents and information on his case to Lieutenant [B].

Q. Did Captain [A] discuss or advise the accused about the case after the 19 December 1996 re-preferral, and did he ever form or renew an attorney-client relationship with the accused after that date?

A. We really didn't talk again until around the time of the Article 32. I had some casual conversation with him, asking him how things were going and if he was happy with Lieutenant [B]. The only advice I gave him was some general words to the effect that he should keep doing what's

best for him. I did not form or renew an attorney-client relationship with him after 19 December.

Q. Did Captain [A] remember how many meetings or conversations he had with the accused in which he provided legal advice on the case?

A. On 14 June 1996, I was assigned to the accused for his pending administrative separation board. I represented him at the IRO hearing and got him out of the brig. On 16 September 1996, Captain [C], the acting senior defense counsel, detailed me to this court-martial. I probably met with the appellant about 30–40 times between June 1996 and January 1997. He would stop by the office all the time. After 19 December, I only recall about three occasions when we talked and those were about his health or the turnover. The conversations with him while he was in Hawaii were about his health and not legal matters. Once I told him that I was off the case and wouldn't be his attorney anymore, there were no further consultations.

Appellate Exhibit VI.

After receiving this evidence, the military judge made findings of fact. Record at 44–47. He concluded that the "unique combination" of the withdrawal and dismissal of the charges, due to the appellant's medical evacuation, and Captain [A]'s removal from the case, due to his pending transfer, constituted "good cause" to terminate the attorney-client relationship. Record at 48.

Since the appellant had a pending IMC request[2] for Captain [A], the military judge directed that Captain [A]'s commanding officer be apprised (1) of the "attorney-client relationship" that had previously existed with the appellant, and (2) that Captain [A] was "intimately familiar with the facts and circumstances [of the case]." Record at 52. The IMC request was subsequently denied on the grounds that Captain [A] did not have an "existing attorney-client relationship" with

the appellant and was not reasonably available. *See* Appellate Exhibit IX at 3.

## II. STANDARD OF REVIEW

There is little dispute as to the essential facts on this issue. The parties are in agreement that the appellant and Captain [A] established an attorney-client relationship shortly after the original charges were preferred. The original charges were withdrawn and dismissed as a result of the appellant's medical evacuation to Hawaii. Captain [A] was then advised by his senior defense counsel that he would not be reassigned to the appellant's case, if the charges were repreferred, due to his pending transfer.

■ Whether these facts provide a proper legal basis to sever an established attorney-client relationship is a question of law. Even though the military judge reviewed these facts and found "good cause" to terminate the appellant's attorney-client relationship with Captain [A], we are not bound by his legal conclusions and will review this issue *de novo*. *United States v. Blaney*, 50 M.J. 533, 538 (A.F.Ct.Crim.App.1999); *United States v. Siroky*, 44 M.J. 394, 398 n. 1 (1996); S. Childress & M. Davis, 2 *FEDERAL STANDARDS OF REVIEW* § 7.05 (2d ed.1992).

■ With respect to the denial of the IMC request for Captain [A], "[t]his determination is a matter within the sole discretion of [his commander]."[3] RULE FOR COURTS-MARTIAL 506(b)(2), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.). We, therefore, examine the commander's determination for abuse of discretion. *United States v. Anderson*, 36 M.J. 963, 973 (A.F.C.M.R.1993); *United States v. Redding*, 11 M.J. 100, 113 (C.M.A.1981)(Everett, C.J., concurring).

## III. DISCUSSION

■ Once established, an existing attorney-client relationship can only be severed by an express release from the accused, a

---

2. Prior to arraignment, the appellant requested to be represented by Captain [A] when asked by the military judge. Record at 7. Later that same day, 4 March 1997, the appellant submitted an IMC request for Captain [A]. Appellant Exhibit VIII at 2.

3. This provision balances the need of the military commander for the services of the requested counsel to accomplish the military mission against the accused's desire for the services of the requested counsel. *See United States v. Redding*, 11 M.J. at 112.

judicial order, or other good cause. R.C.M. 505(d)(2)(B); *United States v. Acton*, 33 M.J. 536, 538 (A.F.C.M.R.1991); *United States v. Iverson*, 5 M.J. 440, 442–43 (C.M.A.1978). A military defense counsel may not unilaterally withdraw from representing an accused once the attorney-client relationship is established. *Acton*, 33 M.J. at 537. As we have, in this instance, neither consent by the appellant nor a judicial order, the Government argues that good cause exists because (1) the original charges were withdrawn and dismissed due to the appellant's indefinite absence for medical treatment, and (2) Captain [A]'s pending transfer. We disagree.

█ The rationale underlying this argument rests on the Government's contention that the attorney-client relationship ceases to exist once charges are properly withdrawn and dismissed, even if the same charges are later brought to trial. We reject this argument because it undermines the sanctity[4] of the attorney-client relationship, which has long been recognized by the appellate courts and protected from undue Governmental interference. *United States v. Eason*, 21 U.S.C.M.A. 335, 45 C.M.R. 109, 114 (1972)(counsel rights "may not be lightly interfered with"); *Iverson*, 5 M.J. at 442–43 (attorney-client relationship may only be terminated by accused, absent "a truly extraordinary circumstance rendering virtually impossible the continuation of the established relationship"); *United States v. Gnibus*, 21 M.J. 1, 6 (C.M.A.1985)(actions by commanders that interfere with or sever established attorney-client relationships are frowned upon by appellate courts); *United States v. Baca*, 27 M.J. 110, 118 (C.M.A.1988)(continuation of established attorney-client relationship is a "fundamental" right). The withdrawal and dismissal of charges may terminate a court-martial proceeding, but they do not, without more, sever the "relationship" that exists between an accused and counsel with respect to those charges.

█ In this case, the medical evacuation of the appellant for an indefinite period of time provided a sufficient basis for the with-

drawal and dismissal of the charges against the appellant, but did not constitute good cause to terminate his attorney-client relationship with Captain [A]. Although there was initial uncertainty about whether the appellant's medical condition would permit his return to Okinawa, the senior defense counsel and Captain [A] were certainly aware of the possibility that the appellant might return before Captain [A] departed. As it turned out, the appellant was only gone for about three weeks, from late October to mid-November. Since Captain [A] had previously established an attorney-client relationship with the appellant as to charges before the court, had remained in Okinawa even after the appellant returned, and had not been released by the appellant, he could easily have been reassigned to the case. The trial date could have been moved up a few weeks to accommodate his scheduled detachment date or he could have been extended for a few weeks until the case was completed. The fact of the matter is that the attorney-client relationship was severed for no reason other than to accommodate Captain [A]'s transfer. An administrative action, as we have here, made solely to accommodate the change of duty station of the appellant's counsel cannot be a proper basis for severance. *United States v. Murray*, 20 U.S.C.M.A. 61, 42 C.M.R. 253, 254 (1970). Whether the reasons advanced by the Government are considered singly or as a "unique combination" of events, we find the military judge's legal conclusion that "good cause" existed to sever the appellant's attorney-client relationship with Captain [A] is error as a matter of law.

█ When court-martial charges are withdrawn, the defense counsel for the first court-martial need not "invariably" be detailed to a subsequent court-martial, "even though the same charges are involved." *Gnibus*, 21 M.J. at 8. If the convening authority appoints a different defense counsel, "the remedy for an accused who wishes to be represented by the same lawyer who was his counsel at the earlier proceeding is to request, pursuant to Article 38, [UCMJ] that this lawyer be assigned as his individual mili-

---

4. *See Patterson v. Illinois*, 487 U.S. 285, 290 n. 3, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988)("Once an accused has a lawyer, a distinct set of consti-

tutional safeguards aimed at preserving the sanctity of the attorney-client relationship takes effect.")

tary counsel." *Id.* at 9. The appellant did, in fact, submit an IMC request for Captain [A]. *See* Appellate Exhibit VIII at 2. Since his attorney-client relationship with Captain [A] had not been properly severed, the IMC request could only be denied if the requested counsel's commander found "good cause" existed to do so at the time of the request. Manual of the Judge Advocate General, Judge Advocate General Instruction 5800.7C § 0131(d)(2) (Ch–3, 27 Jul 1998)[JAGMAN].

Prior to acting on the appellant's IMC request, Captain [A]'s commander considered the negative endorsement by the senior defense counsel for the area, who cited the absence of an existing attorney-client relationship, as well as Captain [A]'s workload[5] and geographical distance from the place of trial. Appellate Exhibit IX at 5. The commander erred by adopting as his preliminary finding the senior defense counsel's opinion that there was no attorney-client relationship between Captain [A] and the appellant. As a result, he applied the wrong standard to his review of the appellant's request, finding that Captain [A] was "not reasonably available," rather than determining whether "good cause" existed to deny the request and, thereby, sever the attorney-client relationship. Appellate Exhibit IX at 3.

■ In this case, the requested counsel's workload and his geographical distance from the place of trial did not constitute "good cause" to sever his established attorney-client relationship with the appellant. Neither of these reasons is so "extraordinary" as to render "virtually impossible" Captain [A]'s continued representation of the appellant. *Iverson,* 5 M.J. at 442–43; *see also United States v. Eason,* 21 U.S.C.M.A. 335, 45 C.M.R. 109, 113 (1972)(requested counsel's workload insufficient grounds to terminate attorney-client relationship); *United States v. Rachels,* 6 M.J. 232, 234 (C.M.A.1979)(circumstances that establish lack of reasonable availability do not necessarily establish good cause). "Good cause"

contemplates reasons akin to situations like "requested counsel's release from active duty or terminal leave." JAGMAN § 0131(d)(2). Scheduling conflicts between court-martial cases, on the other hand, may create temporary inconveniences for those who have to manage a court-martial docket. However, with adequate advance notice, rarely is a docket so inflexible that the occasional inability of counsel or a key witness to be available for a specific trial date cannot be accommodated. We, therefore, find that the denial by the commander of the appellant's IMC request for Captain [A] was improper and constituted an abuse of discretion.

■ Our superior court declared that "[d]efense counsel are not fungible items" such that appellate courts must engage in "nice calculations as to the existence of prejudice" when an attorney-client relationship is severed without good cause. *United States v. Baca,* 27 M.J. at 119 (quoting, in part, *United States v. Schreck,* 10 M.J. 226, 229 (C.M.A.1981)); *see also United States v. Acton,* 38 M.J. 330, 336 n. 2 (1993) ("reluctance to test for prejudice where an established attorney-client relationship is severed by some authority outside that relationship"). Because the appellant was made to forgo the services of Captain [A] without good cause and without his consent, we will presume prejudice arising from the denial of his statutory right to counsel of his own selection. Arts. 38(b)(3)(B) and 59(a), UCMJ.

### IV. CONCLUSION

Accordingly, we set aside the findings and the sentence. The same or a different convening authority may order a rehearing.

Senior Judge TROIDL and Judge ANDERSON concur.

---

5. "[A]pproving the IMC request will have a detrimental impact on Captain [A]'s defense duties aboard Marine Corps Base Hawaii. Captain [A]'s caseload and trial schedule ... will not permit him to be assigned to your case. On 28 February 1997[,] Captain [A] was detailed as co-counsel to a complicated child abuse case. The *motions litigation for the case start on 31 March* and end on 11 April 1997. The trial is scheduled from 5 May until 23 May 1997. Prior to trial[,] Captain [A] must review thousands of pages of documents, interview numerous witness [sic], and make final trial preparations." Appellate Exhibit IX at 5 (Senior Defense Counsel, Marine Corps Base, Hawaii, memo endorsement of 7 Mar 97).