*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
HOLIFIELD, GROSS, and BLOSSER
Appellate Military Judges

—————————

**UNITED STATES**
*Appellant*

**v.**

**Kyle A. SHELBY**
Sergeant (E-5), U.S. Marine Corps
*Appellee*

**No. 202200213**

—————————

Decided: 24 April 2024

Appeal by the United States Pursuant to Article 62, UCMJ[1]

Military Judge:
Adam M. King

Arraignment 24 February 2022 before a general court-martial convened at Camp Foster, Okinawa, Japan.

For Appellant:
*Lieutenant Colonel James A. Burkart, USMC*
*Major Tyler W. Blair, USMC*

For Appellee:
*Lieutenant Commander Leah M. Fontenot, JAGC, USN*

———

[1] 10 U.S.C. § 862.

Judge BLOSSER delivered the opinion of the Court, in which Chief Judge HOLIFIELD joined. Judge GROSS filed a separate opinion concurring in the result.

———————————

**PUBLISHED OPINION OF THE COURT**

———————————

BLOSSER, Judge:

This case is before us on an interlocutory appeal pursuant to Article 62(a)(1)(A), Uniform Code of Military Justice [UCMJ].[2] The Government asserts one assignment of error [AOE]: the military judge erred when, before trial, he dismissed Charge II and its sole specification on grounds of cumulative error. We find error, vacate the military judge's ruling, and remand for further proceedings not inconsistent with this opinion.

## I. BACKGROUND

On 9 February 2022, the Commanding General, III Marine Expeditionary Force [CG, III MEF] referred five charges, including an allegation that Appellee committed an abusive sexual contact upon a Marine sergeant in violation of Article 120, Uniform Code of Military Justice [UCMJ],[3] to a general court-martial.[4] On 3 February 2023, the military judge dismissed, without prejudice, Charge II and its specification (alleging abusive sexual contact) from the first court-martial based on unlawful command influence [UCI].[5]

On 7 February 2023, CG, III MEF directed the withdrawal and dismissal of the remaining charges, and, on 6 March 2023, forwarded the case to Commander, Marine Corps Forces Pacific [COMMARFORPAC] for disposition.[6]

———————————

[2] 10 U.S.C. § 862(a)(1)(A).

[3] 10 U.S.C. § 820.

[4] Previous Charge Sheet, dated 4 January 2022.

[5] App. Ex. XVII at 2-3.

[6] App. Ex. XVII at 3.

On 4 April 2023, COMMARFORPAC authorized preferral of the same charges.[7] The Government preferred the present charges on 7 April 2023.[8]

Between dismissal of all charges on 7 February 2023 and preferral of the same charges on 7 April 2023, Captain [Capt] Adcock, USMC—Appellee's individual military counsel [IMC] for the first court-martial—took at least three actions on Appellee's behalf. On 15 February, he emailed trial counsel, asking if he had an update on the way forward with the case.[9] Also on 15 February, he emailed several judge advocates in the current convening authority's Office of the Staff Judge Advocate [OSJA], seeking a time to discuss the case and stating, "[w]e are interested in resolving this case efficiently considering my client's life circumstances and the case's procedural posture."[10] One of the judge advocates from the OSJA responded the same day, indicating they had not "heard anything about the case yet."[11] On 6 March, Capt Adcock emailed a different judge advocate from the OSJA to determine whether trial counsel had presented the case to him.[12] The military judge's ruling does not reflect whether the OSJA responded to this query.

On 19 April 2023, the convening authority scheduled the Article 32, UCMJ, preliminary hearing for 26 April 2023.[13] The appointing order for the preliminary hearing identified Capt Wilson, USMC, and Capt Adcock as Appellee's detailed defense counsel.[14]

Despite the actions he took on Appellee's behalf during the preceding months, on 24 April 2023, Capt Adcock provided Appellee a "Termination of Representation" letter.[15] The letter stated, "Since you no longer have charges pending at [the first] court-martial, this completes my representation of you. I will close your file and take no further action on your behalf. . . . Because your

---

[7] App. Ex. XVII at 4; App Ex. XV at 3.

[8] Current Charge Sheet, dated 7 April 2023; App. Ex. XVII at 4.

[9] App. Ex. XV at 3.

[10] App. Ex. XVII at 3; App. Ex. IX at 4.

[11] App. Ex. XVII at 3; App. Ex. IX at 3.

[12] App. Ex. XVII at 3; App. Ex. IX at 2.

[13] App. Ex. XVII at 4.

[14] *Id*. This appointing order is the only document in the Record indicating Capt Adcock was detailed to the current court-martial. The convening authority, of course, has no authority to detail defense counsel. Accordingly, we believe this to be a scrivener's error.

[15] *Id*.

case is now closed, I will consider you a former client."[16] Appellee did not consent to Capt Adcock's purported termination of representation.[17]

The next day, Appellee, via Capt Wilson—Appellee's only detailed defense counsel—requested that Capt Adcock be assigned as his IMC.[18] The request stated, "An attorney-client relationship does not currently exist with the requested Individual Military Counsel."[19] Despite an express statement that no attorney-client relationship existed, the request went on to argue that Capt Adcock's:

> extensive involvement in the previous [court-martial] weigh [sic] in favor of this request being granted. [Capt Adcock] previously served as [IMC] prior to the dismissal and re-preferral of the charges. . . . While the current charges have been newly preferred and will be referred by a new convening authority, it is factually equivalent to the prior litigation. As a result of his involvement in the previous proceedings, [Capt Adcock] became intimately familiar with the case, factually and procedurally. This would make his participation in the pending court-martial invaluable to [Appellee's] defense.[20]

The same day he submitted the IMC request, Capt Wilson also requested a continuance of the preliminary hearing until no earlier than 29 May 2023, noting that Capt Adcock was "no longer [Appellee's] attorney" but would be requested as IMC.[21]

As of 27 April 2023, Capt Adcock had detached from the Defense Services Organization and was administratively reassigned to Combat Logistics Company 33 in preparation for execution of permanent change of station [PCS] orders directing him to the United States Naval Academy [USNA] no later than 10 June 2023 for assignment as a military instructor.[22]

---

[16] *Id.*

[17] *Id.*

[18] App. Ex. XVII at 4; App. Ex. III at 3.

[19] *Id.*

[20] App. Ex. XVII at 5; App. Ex. III at 3–4.

[21] App. Ex. XVII at 5.

[22] App. Ex. XVII at 5–6.

On 3 May 2023, the convening authority denied Appellee's IMC request, finding Capt Adcock not reasonably available because he would soon detach from his current command for follow-on duty as an instructor at the USNA.[23]

Following the denial of Capt Adcock as IMC, Appellee requested Lieutenant [LT] Harris, JAGC, USN, be assigned as his IMC. Appellee also requested the convening authority continue the preliminary hearing "to ensure [Appellee] is adequately represented by counsel of his own selection if that request is granted. . ."[24]

Capt Wilson initially objected to the preliminary hearing occurring before a decision was made on the IMC request for LT Harris. Capt Wilson ultimately withdrew his objection to proceeding without LT Harris, but maintained an objection to proceeding without Capt Adcock.[25] At the preliminary hearing, Capt Wilson voiced his continued objection to proceeding without Capt Adcock. Nonetheless, the preliminary hearing proceeded without Capt Adcock or LT Harris on 31 May 2023.[26]

On 8 June 2023, the preliminary hearing officer recommended referral of all charges to a general court-martial, which the convening authority did on 27 June 2023.[27]

Appellee was arraigned on 11 July 2023. At the arraignment, the parties noted that Appellee's IMC request for LT Harris was still pending.[28] Appellee stated that he wished to be represented by Capt Adcock even though that particular request had been denied.[29]

Appellee's IMC request for LT Harris was approved on 17 July 2023.[30]

In a memorandum to Capt Wilson dated 30 August 2023, Capt Adcock stated that his attorney-client relationship with Appellee ended "on or about

---

[23] App. Ex. XVII at 5–6.

[24] App. Ex. XVII at 6.

[25] *Id.*

[26] *Id.*

[27] App. Ex. XVII at 6–7.

[28] App. Ex. XVII at 7.

[29] *Id.*

[30] App. Ex. XVII at 6-7.

10 February 2023, when the trial counsel withdrew and dismissed all pending charges and specifications against [him]."[31]

On 2 September 2023, Appellee filed a motion to compel Capt Adcock as IMC[32] and a motion to dismiss all charges and specifications with prejudice due to an alleged speedy trial violation.[33] In the motion to compel IMC, Appellee reversed course and contended Capt Adcock's termination of representation was improper.[34] In its response, the Government argued an attorney-client relationship did not exist for the charges in the current court-martial.[35] During the ensuing Article 39(a), UCMJ, hearing on 11 October 2023, Capt Wilson admitted that he was incorrect when he wrote in the IMC request that an attorney client relationship did not exist.[36]

The military judge ruled orally, granting the motion to compel Capt Adcock as IMC.[37] The military judge concluded that good cause did not exist to sever the attorney-client relationship, and that Capt Adcock's purported termination of representation was without authority.[38] The military judge, therefore, concluded an attorney-client relationship still existed between Capt Adcock and Appellee.[39] The military judge found the convening authority improperly denied the IMC request, reasoning the convening authority had "several moments in time . . . to look into this scenario a bit further and determine whether

---

[31] App. Ex. XVII at 7.

[32] App. Ex. VIII; App. Ex. XVII at 7.

[33] App. Ex. XII; App. Ex. XVII at 1.

[34] App. Ex. XVII at 7.

[35] App. Ex. XVII at 7; App. Ex. X at 1–2. In support of this position, the Government relied on Capt Adcock's impermissible attempt to unilaterally terminate his representation of Appellee, Capt Wilson's faulty assessment that no attorney-client relationship existed, and Appellee's reliance on his two counsel's legal analysis. We reject this view as we find no support for it in law or regulation. *See also* R. at 42 (trial counsel responding in the negative when the military judge asked if there was "any authority that supports a counsel unilaterally terminating their representation . . . from an accused who has not released the counsel").

[36] App. Ex. XVII at 7; R. at 29.

[37] R. at 60.

[38] App. Ex. XVII at 13.

[39] App. Ex. XVII at 13; R. at 67–70.

or not there was an attorney-client relationship, even in spite of the Defense's original misstatement that there wasn't."[40]

Ultimately, after ordering Capt Adcock be assigned as IMC, the military judge stated:

> The Court will allow the defense to file additional motions, and the Court intends to issue a ruling on the defense's motion to dismiss for speedy trial violations. That's still pending. That's still before the Court. The Court will permit the defense, with [Capt Adcock's] assistance, to—will permit the defense the opportunity to supplement its motion once [Capt Adcock] is afforded the opportunity to prepare pleadings, to meet with counsel, to meet with the accused, and to engage in preliminary negotiations if there are any.[41]

The military judge went on:

> And the Court is going to permit [Capt Adcock] to consult with the defense and determine whether or not modified trial dates are required, whether or not additional filing dates are requested, and the Court will be open to considering modifications to the trial deadlines, once [Capt Adcock] is able to rejoin the defense team that he should not have been severed from in the first place.[42]

The Article 39(a), UCMJ, hearing ended with trial counsel requesting, and the military judge scheduling, a pre-trial conference[43] on 19 October 2023 "in case the defense [was] not able to get in contact with [Capt Adcock] and deal with schedules, and things of that nature."[44]

The next action reflected in the Record is the military judge's 8 November 2023 written ruling captioned: "Ruling – Defense Motion to Dismiss (Violation of Right to Speedy Trial)."[45] Initially, the ruling appears ambiguous about whether its scope includes a speedy trial analysis. The military judge first wrote:

---

[40] R. at 71.

[41] R. at 73.

[42] R. at 75.

[43] Pursuant to R.C.M. 802.

[44] R. at 76–77.

[45] App. Ex. XVII.

[I]n terms of scope and the issues considered, this ruling involves both the *consideration of the Defense's motion to dismiss for speedy trial violations* and the matters considered within the Court's 3 February 2023 ruling [in the previous court-martial]. Within this conduct, the Court also considers the impact of the cumulative error doctrine. Additionally, this ruling memorializes the Court's ruling granting the Defense's motion to compel [Capt Adcock] as an IMC made orally at the 11 Oct 23 Article 39(a) session.[46]

But then, in a footnote just following that passage, he wrote, "As noted above, in terms of scope and the issue considered, this ruling is an extension of the Court's 3 February 2023 ruling, *as opposed to a ruling on the Defense's motion to dismiss for speedy trial violations.*"[47] Similarly, in his cumulative error analysis, the military judge "defer[red] ruling on whether speedy trial violations occurred until Capt [Adcock] has the sufficient opportunity to supplement the Defense's pleadings on that matter."[48] Any ambiguity about the scope of the ruling is sufficiently clarified, however, in the document's final section where the military judge wrote, "Charge II is dismissed with prejudice *due to the cumulative error* detailed above, *not for alleged violations of the Accused's right to a speedy trial.*"[49]

Additional facts necessary to resolve Appellant's AOE are discussed below.

## II. DISCUSSION

### A. Jurisdiction

The Government may only appeal interlocutory matters in a court-martial with express congressional authorization.[50] Congress provided the Government limited authority to appeal in Article 62, UCMJ, which states in relevant part:

> (a)(1) In a trial by general or special court-martial . . . the United States may appeal the following:

---

[46] App. Ex. XVII at 2–3 (emphasis added).

[47] App. Ex. XVII at 3, n. 8 (emphasis added).

[48] App. Ex. XVII 15–16.

[49] App. Ex. XVII at 19 (emphasis added).

[50] *United States v. Badders*, 82 M.J. 299, 302 (C.A.A.F. 2022) (citing *United States v. Martin Linen Supply Co.*, 430 U.S. 564 (1977)).

(A) An order or ruling of the military judge which termi-
nates the proceedings with respect to a charge or specification.

. . .

(e) The provisions of this section shall be liberally construed to
effect its purposes.[51]

Our superior court has held that "an appeal must actually fall within the stric-
tures of Article 62(a)(1)(A) . . . ,UCMJ, to create appellate jurisdiction."[52]

Here, we have jurisdiction to review the military judge's dismissal as it ter-
minated the proceedings with respect to Charge II and its specification. Simi-
larly, we have jurisdiction to review the military judge's ruling on Appellee's
IMC request as it formed the basis, in part, for the ultimate dismissal. We do
not have jurisdiction to review the military judge's UCI ruling in the first
trial.[53]

**B. Standard of Review**

We review a military judge's ruling to dismiss a charge and its specification
for an abuse of discretion.[54] It is an abuse of discretion if the military judge: (1)
"predicates his ruling on findings of fact that are not supported by the evi-
dence"; (2) "uses incorrect legal principles"; (3) "applies correct legal principles
to the facts in a way that is clearly unreasonable"; or (4) "fails to consider im-
portant facts."[55] In an appeal under Article 62, UCMJ, we review "the evidence
in the light most favorable to the party which prevailed below," which in this
case is Appellee.[56] However, we are limited to acting only with respect to mat-
ters of law.[57] On matters of fact, we are "bound by the military judge's factual

---

[51] Article 62(a)(1)(A), (e), UCMJ, 10 U.S.C. § 862(a)(1)(A), (e).

[52] *United States v. Jacobsen*, 77 M.J. 81, 85 (C.A.A.F. 2017).

[53] The Government could have appealed the military judge's dismissal of charge II
and its sole specification in the first trial but chose not to within the prescribed time-
line. *See* Article 62(a)(2)(A), UCMJ (trial counsel must provide military judge notice of
appeal within 72 hours of the order or ruling).

[54] *United States v. Gore*, 60 M.J. 178, 187 (C.A.A.F. 2004); *United States v. Floyd*,
82 M.J. 821, 828 (N-M. Ct. Crim. App. 2022).

[55] *United States v. Commisso*, 76 M.J. 315, 321 (C.A.A.F. 2017) (citing *United States
v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010) (internal citation omitted).

[56] *United States v. Buford*, 74 M.J. 98, 100 (C.A.A.F. 2015).

[57] R.C.M. 908(c)(2).

determinations unless they are unsupported by the record or clearly errone-ous."[58] We may not "find [our] own facts or substitute [our] own interpretation of the facts."[59]

The denial of an IMC request "is a matter within the sole discretion of that authority [prescribed by the Secretary concerned]."[60] We review such a denial for an abuse of discretion.[61]

## C. Individual Military Counsel Ruling

*1. Right to Individual Military Counsel and Process for Determining Availability*

An accused has a statutory right to be represented in his defense at a general court-martial, special court-martial, or Article 32 preliminary hearing "by [individual] military counsel [IMC] of his own selection if that counsel is reasonably available."[62] Congress mandated that the Secretaries of the Military Departments, "by regulation, define 'reasonably available' for the purpose of [IMC requests] and establish procedures for determining whether the [requested IMC] is reasonably available."[63] The IMC regulations issued by each Military Department are subject to the criteria established by the President in Rule for Courts-Martial 506(b).

Rule for Courts-Martial 506(b)(1) established eight categories of judge advocates who are "not reasonably available" "[w]*hile so assigned*" to certain duties or positions, including "instructor . . . at a Service school or academy."[64] However the President granted each Secretary the discretion to "prescribe circumstances under which exceptions may be made to the prohibitions of [Rule for Courts-Martial 506(b)] when merited by the existence of an attorney-client relationship regarding matters relating to a charge in question."[65]

---

[58] *United States v. Becker*, 81 M.J. 483, 489 (C.A.A.F. 2021) (internal quotation marks omitted).

[59] *United States v. Cossio*, 64 M.J. 254, 256 (C.A.A.F. 2007).

[60] R.C.M. 506(b)(2).

[61] *United States v. Allred*, 50 M.J. 795, 799 (N-M. Ct. Crim. App. 1999).

[62] Article 38(b)(3)(B), UCMJ, 10 U.S.C. § 838(b)(3)(B).

[63] Article 38(b)(7), UCMJ, 10 U.S.C. § 838(b)(7).

[64] R.C.M. 506(b)(1)(F) (emphasis added).

[65] R.C.M. 506(b)(1).

The Secretary of the Navy, via the Judge Advocate General [JAG], issued the Department's IMC regulations in section 0131 of the Manual of the Judge Advocate General [JAGMAN].[66] Section 0131 also provides a non-exhaustive list of factors to be considered when determining if a requested counsel is reasonably available.[67] The JAGMAN places the "burden . . . on the accused or counsel for the accused to state in the request . . . clearly whether the accused claims to have an attorney-client relationship with the requested counsel regarding one or more charges pending before the proceeding, and the factual basis underlying that assertion."[68]

If a "request does not claim an attorney-client relationship regarding any charge pending before the proceeding, and the requested counsel is not reasonably available" by reason of being assigned to one of the enumerated duties or positions, "the convening authority will promptly deny the request."[69] Conversely, if the request clearly states that an attorney-client relationship exists or the requested counsel is not assigned to one of the enumerated duties or positions, "the convening authority will forward the request to the determining authority" and provide specified information for the determining authority's consideration.[70] Neither the Rules for Courts-Martial nor the JAGMAN require or permit *the convening authority* to forecast the requested counsel's future availability.

On the other hand, *the determining authority* must independently determine if the requested IMC "has an attorney-client relationship with the accused regarding any charge pending before the proceeding."[71] "If the determining authority finds that there is an attorney-client relationship regarding any

---

[66] JAGINST 5800.7G.

[67] JAGINST 5800.7G, 0131b(4). Section 0131b(4) also supplements Rule for Courts-Martial 506(b)(1)'s list of persons not reasonably available by virtue of their current assignment.

[68] JAGINST 5800.7G, 0131c(1).

[69] JAGINST 5800.7G, 0131c(2)(b); *see also* R.C.M. 506(b)(2) ("convening authority shall deny the request").

[70] JAGINST 5800.7G, 0131c(2)(c); *see also* R.C.M. 506(b)(2) ("If the accused's requests makes [a claim of an existing attorney-client relationship regarding a charge in question], or if the person is not among those so listed as not reasonably available, the convening authority shall forward the request to the commander or head of the organization, activity, or agency to which the requested person is assigned.")

[71] JAGINST 5800.7G, 0131d(1). In making such a determination, counsel, staff judge advocates, and decision makers would be wise to remember that "withdrawal

charge pending before the proceeding, then the requested counsel should ordinarily be made available to act as [IMC] without regard to whether he or she would otherwise be deemed reasonably available [by reason of being assigned to one of the enumerated duties or positions], unless there is 'good cause' to sever that relationship."[72] The JAGMAN lists the requested counsel's release from active duty and terminal leave as two examples of when good cause may exist.[73]

In accordance with section 0131, the Marine Corps' Legal Support and Administration Manual [LSAM], defines the determining authority for counsel assigned to Marine Corps commands.[74] "The determining authority for IMC requests for counsel not assigned to the [Defense Services Organization], including auxiliary defense counsel with active defense cases, is that attorney's [officer in charge] or commanding officer."[75]

If a military judge finds an IMC was improperly denied, he "may not dismiss charges or otherwise effectively prevent further proceedings based on [denial of IMC]. However, the military judge may grant reasonable continuances until the requested military counsel can be made available[.]"[76] Similarly, if a military judge finds a defect in the Article 32, UCMJ, preliminary hearing, "the

---

and dismissal of charges may terminate a court-martial proceeding, but they do not, without more, sever the 'relationship' that exists between an accused and counsel with respect to those charges." *Allred*, 50 M.J. at 800. "Once established, an existing attorney-client relationship can only be severed by an express release from the accused, a judicial order, or other good cause." *Id*. at 799-800 (citing R.C.M. 505(d)(2)(B). "A military defense counsel may not unilaterally withdraw from representing an accused once the attorney-client relationship is established." *Id*. (citing *United States v. Acton*, 33 M.J. 536, 537 (A.F.C.M.R. 1991); *United States v. Hutchins*, 69 M.J. 282, 289–291 (CA.A.F. 2011). "An administrative action . . . made solely to accommodate the change of duty station of [an accused's defense counsel] cannot be a proper basis for severance." *Allred*, 50 M.J. at 800 (citing *United States v. Murray*, 42 C.M.R. 253, 254 (1970)); *see also United States v. Eason*, 45 C.M.R. 109, 111 (1972) (observing an attorney-client relationship "may not be severed or materially altered for administrative convenience").

[72] JAGINST 5800.7G, 0131d(2).

[73] *Id*.

[74] JAGINST 5800.7G, 0131b(2)(b); Marine Corps Order [MCO] 5800.16 CH-7, Volume 3, 011201.

[75] MCO 5800.16 CH-7, Volume 3, 011201.E.

[76] R.C.M. 906(b)(2).

military judge should ordinarily grant a continuance so the defect may be corrected."[77]

### 2. Military Judge's Ruling

We find that the military judge relied on incorrect legal principles to reach the conclusion that the convening authority improperly denied Appellee's request for Capt Adcock to serve as his IMC.

The military judge found fault in the convening authority's reliance on Capt Wilson's representation that an attorney-client relationship did not exist.[78] But, by placing the burden on the accused to clearly state whether an attorney-client relationship exists, that is precisely what the JAGMAN requires a convening authority to do. The military judge's analysis imposed a responsibility on the convening authority that applies *only* to the determining authority (i.e., the requested counsel's officer in charge or commanding officer). Unlike a determining authority's responsibility to independently assess if an attorney-client relationship exists based on a list of prescribed criteria, a convening authority has only two, simple questions to answer in reviewing an IMC request: 1) does the accused *clearly claim* that an attorney-client relationship exists with the requested counsel; and 2) if not, is the requested counsel *currently assigned* to one of the duties and positions enumerated in Rule for Courts-Martial 506(b)(1) and JAGMAN section 0131. The convening authority has no discretion and shall deny the request only if it does not *clearly claim* an attorney-client relationship and the requested counsel is *currently assigned* to one of the enumerated duties or positions. In all other instances, the convening authority must forward the request to the determining authority.

The convening authority correctly regarded the request as not clearly claiming an attorney-client relationship.[79] By imposing on the convening authority a duty to look beyond Appellee's express representation of no attorney-client relationship, the military judge applied an incorrect legal principle and absolved Appellee from his burden to clearly claim the existence of such a relationship. As such, the military judge abused his discretion by applying an incorrect view of the law.

Nonetheless, we reach the same conclusion as the military judge that the convening authority improperly denied the IMC request, but we do so for a different reason. The convening authority simply had no authority to deny the

---

[77] R.C.M. 906(b)(3) Discussion.

[78] App. Ex. XVII at 14.

[79] App. Ex. XVII at 4.

request. Captain Adcock's *future* assignment to the USNA was not a relevant part of the convening authority's analysis. Based on Capt Adcock's detachment from the Defense Services Organization at the time of the denial, the convening authority's only permissible action was to forward the request to Capt Adcock's commanding officer, as the appropriate determining authority.

The determining authority's requirements are much more expansive than the convening authority's, requiring an in-depth analysis using the criteria listed in JAGMAN section 0131b(3), to determine if an attorney-client relationship existed. And we agree with the military judge that an attorney-client relationship still exists between Capt Adcock and Appellee (despite Capt Wilson's initial representations and Capt Adcock's continued contention to the contrary).

We, therefore, reach the same conclusion—albeit through a different analytical framework—as the military judge that the convening authority improperly denied Appellee's request for Capt Adcock to serve as his IMC.[80]

While we do not know whether the determining authority would have found Capt Adcock reasonably available if the convening authority had properly forwarded the IMC request, we do not require an answer that question under the facts of this case. In its appeal, the Government concedes that "[a]ny error by the Convening Authority was remedied by the Judge's Ruling compelling [Capt Adcock] as counsel for Appellee."[81] This is consistent with the JAGMAN's mandate that a requested counsel ordinarily be made available if an attorney-client relationship exists.

## D. Military Judge's Cumulative Error Analysis

### 1. Cumulative Error Doctrine is not Applicable in the Pretrial Context

The cumulative error doctrine was not born in military courts, but has been used by military appellate courts for more than seven decades[82] as an expansion of the mandate in Article 59(a), UCMJ, that authorizes military appellate

---

[80] We note that the convening authority was not the only person to err regarding Appellee's IMC request. Capt Adcock erred by attempting to unilaterally terminate his representation of Appellee. Capt Wilson erred by representing, in Appellee's IMC request, that "[a]n attorney-client relationship does not currently exist with the requested Individual Military Counsel." Nonetheless, we decline to speculate about what the convening authority would have done if the IMC request had accurately represented the existence of an attorney-client relationship.

[81] Appellant's Reply Br. at 12.

[82] *See, e.g., United States v. Yerger*, 16 C.M.R. 191, 209 (C.M.A. 1954).

courts to set aside a finding only if an error "materially prejudices the substantial rights of an accused."[83] The cumulative error doctrine is a test for prejudice that looks retrospectively at a trial's execution and results to assess the "cumulative effect of all plain errors and preserved errors."[84] Under the doctrine, criminal courts of appeal determine if "'a number of errors, no one perhaps sufficient to merit reversal, in combination necessitate the disapproval of a finding.'"[85] We then reverse only if we find that the cumulative effect of the errors denied an appellant a fair trial.[86]

We are aware of no statute, rule, or case that permits the use of the cumulative error doctrine in the pretrial context. To the contrary, one can hardly assess the cumulative effect of errors on the fairness of a trial if the trial has not yet commenced and a verdict has not yet been announced.

### 2. The Military Judge Erred by Dismissing for "Cumulative Error"

The military judge illustrated his cumulative error analysis with the following series of Government actions, which he described as "includ[ing] UCI and prosecutorial misconduct":

> (1) the initial misleading representation of the disqualified [t]rial [c]ounsel to the original SJA, which created misinformed preferral and referral decisions regarding Charge II;

> (2) the delayed and ultimately compelled disclosure of required discovery surrounding [the alleged victim's] 3 January 2022 interview with the disqualified [t]rial [c]ounsel;

> (3) the nonresponsive, confrontational, and accusatory answers submitted by the disqualified [t]rial [c]ounsel to the Defense pursuant to Court-ordered discovery;

> (4) the initial improper denial of [Appellee's] IMC request for Capt [Adcock] (including a neutral forwarding endorsement memo from the [s]enior [t]rial [c]ounsel that omitted both analysis and a recommendation);

> (5) the decision to proceed with the Article 32[,UCMJ,] [p]reliminary [h]earing over Defense objection regarding Capt

---

[83] 10 U.S.C. § 859(a).

[84] *United States v. Pope*, 69 M.J. 328, 335 (C.A.A.F. 2011).

[85] *Pope*, 69 M.J. at 335 (quoting *United States v. Banks*, 36 M.J. 150, 170–71 (C.M.A. 1992)).

[86] *Banks*, 37 M.J. at 171.

[Adcock]'s absence based on the convening authority's improper denial;

(6) the continued denial of Capt [Adcock] to serve IMC [sic] from the Article 32 hearing through the filing of pleadings and the 11 October 2023 Article 39(a) session; and

(7) the resulting delay in Capt [Adcock] being produced to assist [Appellee] in defending against Charge II from the denial of the IMC request to the present date.[87]

As an initial matter, to the extent the military judge may have reconsidered his 3 February 2023 ruling on UCI in this ruling,[88] doing so would be improper. A military judge cannot reconsider a ruling from a court-martial that no longer exists. A military judge may, however, conduct a new analysis of all facts *affecting the current court-martial*, including any relevant facts related to a previous court-martial—provided those facts are raised in the current court-martial.

In concluding that "the cumulative error doctrine . . . may . . . be considered at the trial level," the military judge relied on the First Circuit's decision in *United States v. Padilla-Galarza*[89] and the Army Court of Criminal Appeals' decision in *United States v. Badders*.[90] The military judge's reliance on these cases was misplaced.

While the court in *Padilla-Galarza* wrote that cumulative error "claims are *typically* raised . . . for the first time on appeal," the decision was the culmination of the court's *post-trial review* of the appellant's convictions.[91] And nothing in that decision supports a conclusion that cumulative error analysis is appropriate in the pretrial context.

Our sister court's review in *Badders* came via an unusual Article 62, UCMJ, procedural path. Appellee moved, *post-trial*, for entry of a finding of not

---

[87] App. Ex. XVII at 17–18.

[88] "[T]his ruling involves . . . the consideration of . . . the matters considered within the Court's 3 February 2023 ruling." App. Ex. XVII at 2–3; *see also* App. Ex. XVII at 17–18 (UCI and prosecutorial misconduct, and examples 1–3 occurred during previous trial).

[89] *United States v. Padilla-Galarza*, 990 F.3d 60, 85 (1st Cir. 2021) (finding appellant's post-trial cumulative error claim "fanciful").

[90] *United States v. Badders*, No. ARMY 20200735, 2021 CCA LEXIS 510 (Army Ct. Crim. App. Sep. 30, 2021) (unpublished).

[91] *Padilla-Galarza*, 990 F.3d at 85 (emphasis added).

guilty, dismissal with prejudice, or a mistrial.[92] Following a post-trial Article 39(a), UCMJ, session to address the motion, the military judge relied on the cumulative error doctrine to declare a mistrial, citing the "cumulative effect of two evidentiary rulings she determined were erroneous yet non-prejudicial and her post-trial finding of implied bias linked to one panel member[.]"[93] The Government appealed the military judge's decision under Article 62, UCMJ.

The Army court first concluded that assessing a member's implied bias under cumulative error is improper, reasoning that such an error is not tested for prejudice and has only one remedy: declaration of a mistrial.[94] However, the court went on to determine the military judge erred in her "cumulative error math," and abused her discretion by finding implied bias and declaring a mistrial.[95] Nothing in *Badders* supports a military judge conducting a pretrial cumulative error analysis.

We hold that the cumulative error doctrine does not apply in a *pretrial* context.[96] Pretrial, a military judge is able to ensure a fair trial by addressing each error—as he did here—with a tailored remedy.

## III. CONCLUSION

The Government's appeal is **GRANTED**. The military judge's dismissal of Charge II and its specification is **VACATED**. The record of trial is returned to the Judge Advocate General for remand to the convening authority and delivery to the military judge for further proceedings consistent with this opinion.

---

[92] *Badders*, 2021 CCA LEXIS at *1–2.

[93] *Id.* at *2.

[94] *Id.* at *30–31.

[95] *Id.* at *43.

[96] We need not decide if a military judge may conduct a cumulative error analysis *post-trial*.

GROSS, Judge (concurring in the result):

I concur with the Court's decision that the military judge erred by applying the cumulative error doctrine at the trial level, prior to the court reaching findings. I write separately because I do not believe that the military judge's ruling directing the appointment of Capt Adcock as Individual Military Counsel [IMC] is properly before this Court. I would therefore limit our decision solely to the question of whether the military judge's dismissal for cumulative error was correct in law. While the majority opinion does an excellent job of detailing the regulatory and statutory framework for consideration and decision on a request by an accused for appointment of an IMC, the military judge's order granting Capt Adcock—by itself—did not terminate the proceedings with respect to a charge or specification or otherwise amount to a ruling that would permit the Government to invoke this Court's jurisdiction under Article 62, UCMJ.

The military judge issued his order directing the appointment of Capt Adcock on 11 October 2023. The Government did not seek reconsideration of his ruling, nor did the Government seek relief from this Court in the nature of an extraordinary writ. "When a party does not appeal a ruling, the ruling of the lower court normally becomes the law of the case."[1] Although the military judge considered the Government's actions in denying Capt Adcock as one of the many Government missteps (some apparently intentional) leading to his decision to dismiss Charge II with prejudice, his ruling is based on the compilation of errors with the IMC denial and subsequent intransigence apparently being the proverbial "straw that broke the camel's back." While the majority may be right that the military judge reached the right answer on the IMC question but for the wrong reasoning, I would find that the Government's decision not to appeal that ruling leaves nothing for us to review.

Despite the fact that we vacate the military judge's ruling, nothing in this opinion should be read as condoning the Government's behavior in how it has sought to prosecute Appellee up to this point. The military judge's ruling sets forth a series of concerning actions and decisions by the Government both in the current court-martial and the prior proceedings that could be construed to demonstrate a "win at all costs" mentality. Trial counsel would be wise going forward to remind themselves of the Supreme Court's famous exhortation to be:

---

[1] *United States v. Parker*, 62 M.J. 459, 464 (C.A.A.F. 2006).

the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.[2]

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[2] *Berger v. United States,* 295 U.S. 78, 88 (1935).